IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAMARA P. HAAS,

    Plaintiff,

vs.                                                                   No. CIV 97-1358 MV/DJS

STATE OF NEW MEXICO ex rel
HIGHWAY AND TRANSPORTATION
DEPARTMENT; STATE PERSONNEL
BOARD and STATE PERSONNEL OFFICE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment, filed September 25, 1998 **[Doc. No. 29]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion will be **GRANTED IN PART AND DENIED IN PART**, as explained below.

### BACKGROUND

Plaintiff Tamara Haas ("Hass") asserts violations of the Equal Pay Act and Title VII by her employer, the State of New Mexico Highway and Transportation Department ("Department" or "Highway Department").

**A.    Undisputed Material Facts**

For the purpose of deciding this motion, the Court finds that the following are the undisputed facts, as disclosed by the record:[1]

---

[1] The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Mere

1. The Highway Department hired Plaintiff to the position of Highway Engineer III on September 5, 1995.

2. When she was hired, Haas became the only female Engineer III in the Department which employed 52 male Engineer IIIs.

3. Haas was the lowest paid Engineer III in the Department when she was hired.

4. Haas had more years of experience than 31 of the 52 male Engineer IIIs in the Department at the time of her hire.

5. Haas still works for the Department as an engineer, although she applied for and was given a lateral transfer into a new position at some point prior to the initiation of this lawsuit. She was not ever given a pay increase other than standard cost of living increases.

6. Governor Johnson assumed office in January of 1995, the year Haas was hired.

7. Jody Hooper was the State Personnel Director when Haas was hired.

8. Salaries at the Highway Department are controlled by the New Mexico State Personnel Act. The Act created the State Personnel Board ("Personnel Board") which promulgates personnel rules and salary ranges for all state employees. The State Personnel Office ("Personnel Office") administers the Personnel Board's rules. The goal of the system is to ensure that all employees are paid equivalently based on education, experience and seniority.

9. The Personnel Board establishes a salary range for every state government position. The midpoint of the salary range is deemed 100% of the range. The "compa-ratio" is pay expressed as a percentage of the midpoint. Thus, a compa-ratio of 97% is 3% below the midpoint of the salary range.

---

assertions that a fact is or is not controverted are insufficient. *Id.*

10. At the time Haas was hired, new hires were given a salary at the 97% compa-ratio. However, a new hire could be given a higher salary if a request was made to and approved by the Personnel Director. In January 1996, after Haas was hired, authority for approving new hires above the 97% compa-ratio was transferred directly to the Personnel Board.[2]

11. Anthony Alarid, a Human Resources Director for the Highway Department, was "under the impression" that Personnel Director Hooper would not approve a new hire at above the 97% compa-ratio.

12. Alarid also testified that he did not believe Secretary Pete Rahn (apparently the Cabinet Secreatry for the Highway Department) would approve a request for a new hire above 97%.[3] Although the parties fail to clarify the "chain of command," apparently Secretary Rahn had the authority to approve whether a request for a hire above the 97% compa-ratio was forwarded to Personnel Director Hooper who had ultimate authority to approve of such hires.

13. Although Defendants originally claimed that a hiring freeze was in effect when Haas was hired, they now acknowledge that there was merely a "indication" that a freeze "could

---

[2] Defendants claim that Jody Hooper issued a directive on June 13, 1995, prior to Haas' hire, stating that only if recruitment efforts justified would a new employee be hired above the 97% compa-ratio. However, the memo offered by Defendants to prove this fact is actually dated January 18, 1996, after Haas' hire, and the content of the memo does not support Defendants' assertions. Further, Hooper in her deposition denied ever issuing such a directive. Defendants have failed to offer any evidence to demonstrate that such a directive was issued, but merely assert in their Reply that Hooper's denial does not establish that a directive was not issued. Given that Defendants have failed to produce any evidence that a directive was issued, Hooper's denial does constitute uncontroverted evidence that no such directive was issued.

[3] Defendants claim that Secretary Rahn also issued a directive to all department heads emphasizing the need for cost cutting and stating that new hires above the 97% compa-ratio would not be approved. Defendants have not produced the directive but cite the deposition testimony of Anthony Alarid who recalled such a directive. Plaintiff, on the other hand, cites the deposition testimony of Secretary Rahn and Deputy Secretary Ron Gaines, neither of whom recall such a directive being issued. This is therefore a controverted fact.

3

be imposed" and that all cabinet secretaries were "under pressure" from the new administration to cut department costs.

14. At the time Haas was interviewed for the position of Engineer III, she discussed the potential salary with Rhonda Martinez who was conducting the hiring. Haas asked that she be given a salary similar to what she was earning in her current job with the Federal Highway Administration. Martinez indicated that she would ask, but was not sure she could obtain that salary level.

15. At the time, Haas had worked at the Federal Highway Administration for over 12 years and was paid $24.52 per hour.

16. Martinez informed Haas that she had spoken with the Deputy Secretary of the Highway Department, Ron Gaines, regarding her potential salary. Martinez reported to Haas that Deputy Secretary Gaines told her that the department was under a hiring freeze (which, as noted above, was not true) and that Secretary Rahn would not approve any hires above the 97% compa-ratio.

17. Martinez informed Haas that the Department was only willing to offer a starting salary at the 97% compa-ratio, or $21.921 per hour.

18. Haas was offered the position over two qualified male applicants.

19. Haas accepted the position at the offered salary.

20. Deputy Secretary Gaines testified at his deposition that he did not request a salary above the 97% for Haas based on his "belief" that Personnel Director Hooper would not approve such a request. Deputy Gaines further stated that he did not make such a request because it would have taken several weeks to be approved and the position was "critical" and needed to be filled

immediately. Deputy Gaines was aware that a request for a hire salary could be made but purposefully chose not to make such a request.

21. Personnel Director Hooper testified at her deposition that a request for a higher salary could have been approved within three days. She further stated that she recalled approving every request made to her by the Highway Department for a higher salary.[4]

22. Personnel Director Hooper further testified that if a position was "critical" it would not have been difficult to gain approval for a salary higher than the 97% compa-ratio and that many people were hired at salaries above this rate.

23. Charles Hatch was hired as an Engineer III at a salary above the 97% rate in November, 1994. A request was made that Hatch be given a higher salary commensurate with his experience at the Federal Highway Administration and in order to prevent him from experiencing a large reduction in salary. Accordingly, Hatch was hired at a rate of $26.441 per hour. Hatch was hired under the administration of the previous Governor and under a different Personnel Director.

24. Alvin Dominguez was hired as an Engineer III with a start date of August 26, 1995, less then two weeks prior to Plaintiff's start date. Dominquez was hired at a rate of $24.660 per hour. Dominguez was hired under the administration of Governor Johnson; the parties have not identified who the Personnel Director was at the time.

---

[4]Defendants argue that Plaintiff has failed to produce any evidence that a request for a higher salary was ever actually made to Personnel Director Hooper. Defendants then assert that the all of the hires above the 97% compa-ratio occurred under the next Personnel Director Rex Robberson. However, the testimony cited by Defendants does not support this contention. The cited testimony specifically refers to new hires given salaries above the 97% compra-ratio prior to Robberson's assuming office. It is true that the testimony does not identify who the Personnel Director was at the time. Thus, while Plaintiff has not proven that requests above the 97% ratio were actually submitted to Personnel Director Hooper, neither have Defendants produced any evidence controverting her assertion that she actually approved requests from the Department.

25. Haas has approximately one year more experience than Dominguez.

26. James Gallegos was hired as an Engineer III at a salary above the 97% rate in September, 1996. The Highway Department requested a higher salary for Gallegos also due to his years of experience and to narrow the cut in pay he would experience. Gallegos was hired under the administration of Governor Johnson but after Rex Robberson had taken over as Personnel Director.

27. Haas has more years of experience than Gallegos and a greater educational background.

28. Defendants point to three male employees who were hired at the 97% compa-ratio close to when Haas was hired. All three were hired as Engineer IIs, not Engineer IIIs like Haas, Hatch, Dominguez and Gallegos.

29. In January 1996, Haas' supervisor, Chris Ortega requested that she and a coworker, Robert Garcia, receive salary increases because they were underpaid in comparison to the other engineers.

30. On September 23, 1996, Secretary Rahn asked the State Personnel Office to approve a higher salary for Haas. In his letter, Secretary Rahn specifically notes that Haas is the lowest paid Engineer III, that she is paid less than all of the men in the department in similar positions, and that she has more experience than 56% of the men in the same position. Secretary Rahn further states that Haas' salary is more than 15% below the average salary for an Engineer III.

31. On October 3, 1996, Personnel Director Robberson declined the request for a salary increase for Haas, stating that there was no rule which would permit such an adjustment. In

his letter Personnel Director Robberson states that Haas' low salary is the result of the failure to request a higher pay rate when she was hired and then asks, "[i]s there some reason why you made this decision in 1995 and you are now wishing to correct a mistake?"

32. A meeting was held following this rejection letter with Deputy Secretary Gaines, Human Resources Director Alarid, and Haas' supervisor Ortega. Ortega's notes from this meeting indicate that the Personnel Office could approve a higher salary for Haas retroactive to her hire date. Human Resources Director Alarid recommended against it "partly because of the precedent it would set and the can of worms it would open up," and Deputy Secretary Gaines indicated that "he did not like the idea of pushing for a higher salary" for Haas.

33. Defendants now admit that if the Highway Department admitted it made an error when Haas was first hired at the lower salary rate, the Personnel Office could have approved a retroactive salary increase.

34. After Haas received a lateral transfer, her new supervisor again requested a salary increase for her. The request was denied on the basis that Secretary Rahn did not want to change the policy that salary increases were not given for lateral transfers.

35. The State Highway Department maintains an internship program to recruit engineers which results in more rapid acceleration to higher salaries for the participants.

**B.    Contested Issues Between the Parties**

Defendants contend and Plaintiff denies that Personnel Director Hooper issued a directive that only if recruitment warranted would a hire above the 97% compa-ratio be approved. As noted above, Defendants have failed to produce any evidence of the directive. Further, Defendants contend and Plaintiff denies that Personnel Director Hooper never actually approved a

new hire salary above the 97% compa-ratio. As noted above, Defendants have failed to prove this fact. Finally, Defendants contend and Plaintiff denies that Secretary Rahn issued a directive that no hires above the 97% compa-ratio would be approved. The parties have presented conflicting deposition testimony on this point. No other contested issues are presented.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case."*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United*

*States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

Plaintiff presses claims of sex discrimination pursuant to the Equal Pay Act and Tittle VII. Defendants argue that there is no factual basis for the claims against two of the named Defendants, the State Personnel Board and the State Personnel Office. Plaintiff concedes that these parties should be dismissed. Accordingly, that portion of Defendant's Motion seeking to dismiss the Personnel Board and the Personnel Office shall be granted.

In the remainder of their Motion, Defendants assert that there is no genuine issue of material fact as to Plaintiff's remaining claims and that they are entitled to judgment as a matter of law. While Defendants are correct that there are few relevant factual disputes between the parties, they are not entitled to judgment as a matter of law, as explained below.

### 1. Equal Pay Act Claim

The Equal Pay Act provides, in relevant part:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex

29 U.S.C. § 206(d)(1). As the Supreme Court summarized,

> Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry--the fact that the wage structure of 'many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.' The solution adopted was quite simple in principle: to require that 'equal work will be rewarded by equal wages.'

*Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (citation omitted).

"The Act's basic structure and operation are similarly straightforward." *Ibid*. To establish a *prima facie* case under the EPA, the plaintiff has the burden of proving that

> (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances.
>
> If a prima facie case is so established under the EPA the defendant must undertake the burden of persuading the jury that there existed reasons for the wage disparity which are described in the Equal Pay Act. These reasons are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; (4) a disparity based on any factor other than sex.

*Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993) (citations omitted). Unlike an action pursuant to Title VII, the plaintiff charging a violation of the Equal Pay Act does not have to prove discriminatory intent. *Sinclair v. Automobile Club of Oklahoma*, 733 F.2d 726, 729 (10th Cir. 1984). On the contrary, the Equal Pay Act creates a form of strict liability where the employer cannot explain the pay differential based on one of the grounds enumerated in the statute. *Id*. Further, courts have held that "a disparity based on any factor other than sex" does not mean literally *any* other factor but encompasses only those reasons which have a legitimate business purpose. *E.E.O.C. v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988).

In the present case, Defendants concede for the purposes of this motion that Plaintiff can establish a *prima facie* case under the Equal Pay Act. They contend, however, that they are entitled to judgment as a matter of law because the disparity in Haas' pay as compared to all of the men she works with is due to a "factor other than sex" which has a legitimate business purpose. Defendants assert that Haas was hired at a salary lower than all of her male counterparts, the majority of whom were less qualified than her, due solely to the fact that she was hired under Governor Johnson's administration, under Personnel Director Hooper, and at a time when there was a "risk" of a hiring freeze and "pressure" on department heads to cut their department budgets. This unique arrangement of facts, they contend, explains why Haas was given a lower entry level salary than all of the men, including several men who were hired within one year of Haas and who had less experience than her.

Defendants may as well argue that the unique constellation of the stars the day Haas was hired accounts for the difference in salaries. Indeed, Defendants' given reasons lack any semblance of credibility. It was Defendants' failure to request a salary above the 97% compa-ratio for Haas and their concurrent and consistent practice of requesting a salary above the 97% compa-ratio for all of the male new hires to the position of Engineer III which resulted in the pay differential, not any of the facts cited above. Defendants attempt to explain their failure to even make this request as a result of their "belief" that the request would be denied due to the budget constraints noted. Although Defendants acknowledge that budget constraints are always an issue in state government, they incredulously argue that such constraints did not apply every time a man was hired to the Engineer III position, including when men who were hired within months of Haas.

Even stretching the imagination to accept Defendants' arguments at face value, the fact that Haas was hired during an apparently fleeting moment of budgetary crisis is not a legitimate reason for her to be paid less than every other man in the same position doing the same work. It is not Haas' duty to single handedly carry the budgetary burdens of the state. Defendants chose to impose an extra financial burden on her rather than requesting the equivalent salary as they did every time a man was hired. This, simply stated, is unfair, unjust and illegal.

Moreover, once this budgetary crisis supposedly passed, Defendants chose to hire new men to the same position at higher salaries, men with lower qualifications than Haas, without ever adjusting her salary to the proper level. Defendants made this choice even though they now admit that it was within their power to adjust Haas' pay. The failure to adjust Plaintiff's salary to a level equivalent with the male employees is itself sufficient to demonstrate a violation of the Equal Pay Act. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 596 (11th Cir. 1994) *cert. denied* 115 S.Ct. 298, 513 U.S. 919, 130 L.Ed.2d 212.

Defendants defend their decision not to seek a retroactive pay raise for Haas to bring her salary into line with all of her male counterparts by stating, "had [the Highway Department] taken the position that plaintiff advocates, the department would have opened itself to a floodgate of employees arguing that their original starting salaries were similarly erroneous. To pay an employee retroactively has the potential for costing an enormous amount of money, time and morale. It is a legitimate non-gender based decision for the department to choose not to retroactively compensate an employee who voluntarily accepted the salary offered." Defendants' Reply, p. 13. It most certainly is not.

Defendants repeatedly raise arguments to this effect: that because Haas "voluntarily" chose to accept the job at the wage offered and because she was hired above two qualified men, she could not now be discriminated against. These arguments are legally irrelevant. Even if Defendants had explained to Haas at the time she accepted the position that she was going to be paid less than all of the men including more than half of whom were less qualified than her– which they did not– and even if Defendants had obtained a waiver that she did not consider this discrimination– which they did not– Defendants' argument would still fall flat. Public policy forbids discrimination on the basis of gender; Defendants cannot "bargain for" the right to discriminate. Further, the facts demonstrate that by the Court's admittedly rough calculation Defendants have saved themselves over $30,000 by paying Haas less then her male counterparts. To argue that Haas could not have been discriminated against because, after all, she was given the job, ignores the very real benefit accrued to Defendants by paying her less for the same work. It is this very harm which the Equal Pay Act seeks to redress.

Defendants were indeed free to choose between rectifying the recognized injustice before their eyes and running the risk of being found liable at trial should Haas sue. Defendants must now face the consequences of that choice. But the fact that Defendants chose to run the risk of liability is in no sense a legitimate defense to liability.

Thus, even if the Court concluded that Defendants' explanation as to why they did not initially request a higher salary for Haas is sufficient, Defendants' failure to adjust her salary even while they hired less qualified men at a higher rate is not supported by any legitimate business consideration. *Mulhall*, 19 F.3d at 596; *Tidwell*, 989 F.2d at 409. Accordingly, Defendants are not entitled to judgment as a matter of law as to Plaintiff's claim under the Equal Pay Act.

## 2. Title VII Claim

Title VII prohibits intentional discrimination in employment on the basis of gender in both public and private employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Tidwell*, 989 F.2d at 409. Under Title VII, as with the Equal Pay Act, the plaintiff has the burden of demonstrating a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802; *Tidwell*, 989 F.2d at 409. Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802; *Tidwell*, 989 F.2d at 409. The burden then shifts back to the plaintiff to demonstrate that the proffered reasons are pretextual. *McDonnell Douglas*, 411 U.S. at 802; *Tidwell*, 989 F.2d at 409. The plaintiff always carries the ultimate burden of persuading the fact finder that the defendant intentionally discriminated against him or her. *McDonnell Douglas*, 411 U.S. at 802; *Tidwell*, 989 F.2d at 409.

In the present case, Defendants again concede that Plaintiff has established a *prima facie* case of discrimination but argue that their proffered reasons are sufficient to rebut her case. For the reasons noted above, the Court concludes that Defendants have failed to even articulate a legitimate nondiscriminatory reason for their actions. Moreover, even if the Court were to accept Defendants proffered reasons as legitimate, Plaintiff has presented sufficient evidence that these reasons are merely pretextual and to support the inference of intentional discrimination.

Defendants assert numerous times that Plaintiff's "only" evidence of discrimination is that she was paid less than every other similarly situated male employee, even when she had more experience and better credentials than 56% percent of the men by Defendants' own estimation. This alone is pretty strong evidence.

But Plaintiff has presented far more than a simple case of disparate pay. Rather, Haas has proven that Defendants repeatedly lied to her. When Haas originally applied for the Engineer III position, she was told that she could not be given a higher salary because a hiring freeze was in effect. In fact no such freeze was in effect. When Haas sought a retroactive pay raise to bring her salary into line with her male colleagues, she was told that the Personnel Board rules did not provide for such a pay raise. In fact the rules allowed for a pay raise if the original salary had been given in error. What is even more of concern is that Defendants attempted to compound these lies by presenting them to the Court as uncontested facts. Only in their Reply brief, after Plaintiff had established the falsity of these assertions, did Defendants clarify that these statements were in fact not true.

Further, the Court must note again that Haas' supervisor and the Secretary of the Department, recognizing the difference in pay and its correlation to gender, brought the disparity in salary to the attention of the Personnel Office and asked that Haas' salary be adjusted accordingly. Defendants intentionally chose to continue to pay Haas less than less qualified men. This is very strong evidence of intentional discrimination and very strong evidence that Defendants' proffered reasons are nothing but pretext.

Because the Defendants have failed to proffer legitimate nondiscriminatory reasons for their actions and because Plaintiff has offered sufficient evidence to demonstrate pretext and to support the inference of intentional discrimination, Defendants are not entitled to judgment as a matter of law on Plaintiff's Title VII claim. *McDonnell Douglas*, 411 U.S. at 802; *Tidwell*, 989 F.2d at 409.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 29] is **GRANTED IN PART AND DENIED IN PART**. That portion of Defendants' Motion seeking to dismiss Defendants, the State Personnel Board and the State Personnel Office, is hereby **GRANTED** and said Defendants are hereby **DISMISSED** from the case. That portion of Defendants' Motion seeking to dismiss Plaintiff's claims pursuant to the Equal Pay Act and Title VII is hereby **DENIED**. Said claims against the sole remaining Defendant, State of New Mexico ex rel Highway and Transportation Department, remain properly before the Court.

MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
E. Justin Pennington

Attorney for Defendant:
Paula I. Forney